THOMAS M. MCINERNEY, State Bar No. 162055
tmm@ogletreedeakins.com
ERICA K. ROCUSH, State Bar No. 262354
erica.rocush@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, California 94105
Telephone:    (415) 442-4810
Facsimile:    (415) 442-4870

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL FERRIGNO,<br><br>        Plaintiff,<br><br>   v.<br><br>PHILIPS ELECTRONICS NORTH AMERICA CORP.; KONINKLIJKE PHILIPS ELECTRONICS; VICTORIA ELWELL, HEIN RENSMA, PAUL VAN DER SANDEN, individuals, and DOES 1 THROUGH 100, inclusive,<br><br>        Defendants. | Case No. C09-03085 RMW<br><br>**DEFENDANTS KONINKLIJKE PHILIPS ELECTRONICS, HEIN RENSMA, AND PAUL VAN DER SANDEN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION**<br><br>(Filed concurrently with Notice of Motion and Motion, Declaration of Erica Rocush, Declaration of Hein Rensma, Declaration of James Durchak, Declaration of Paul Van Der Sanden, [Proposed] Order)<br><br>Date:  April 23, 2010<br>Time:  9:00 a.m.<br>Courtroom: 6<br>Assigned to: Hon. Ronald M. Whyte |

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

1    Defendants Koninklijke Philips Electronics N.V. ("KPE"), Hein Rensma ("Rensma"), and

2    Paul Van Der Sanden ("Van Der Sanden") (collectively "Defendants"), by and through

3    undersigned counsel, and pursuant to Fed.R.Civ.P. 12(b)(2) and (b)(5) hereby move to dismiss

4    plaintiff Carl Ferrigno's complaint against them for insufficient service of process and lack of

5    personal jurisdiction.

6    **I.   FERRIGNO HAS NOT VALIDLY SERVED DEFENDANTS.**

7    Plaintiff Carl Ferrigno attempted to serve KPE, Rensma and Van Der Sanden by mailing a

8    California state court summons to each of them via international first-class mail, on July 6, 2009.

9    (Declaration of Erica Rocush ("Rocush Decl."), Exhibit A).  On July 9, 2009, Defendant Philips

10   Electronics North America Corp. ("PENAC") removed the case to this Court.

11   Cal. Code Civ. Proc. § 415.40 states that:

12   A summons may be served on a person outside this state in any manner provided by
     this article or by sending a copy of the summons and of the complaint to the person
13   to be served by first-class mail, postage prepaid, requiring a return receipt. *Service
     of a summons by this form of mail is deemed complete on the 10th day after such
14   mailing.* (emphasis added)

15   Based on the foregoing, even assuming that service by mail would have been effective
16
     service on any of the defendants, all of whom are residents of the Netherlands, such mail service
17
     would not have been complete until July 16, 2009—seven days after PENAC removed the case
18
     from state to federal court.
19
     Under controlling Ninth Circuit law, a state court summons issued but not served prior to
20
     removal of a state court action to federal court does not retain any efficacy for further service of
21
     process after the removal. *Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967); *Richards v.
22
     Harper*, 864 F.2d 85, 87 (9th Cir. 1988).  Rather, as explained by the Ninth Circuit in *Beecher*,
23
     where a defendant has not been served with the state process prior to removal,
24
25   the defendant has never been put on notice of the state court proceeding prior to
     removal… [and] the federal court cannot 'complete' the state process by permitting
26   it to be served after removal; rather the federal court must issue new process
     pursuant to Rule 4 of the Federal Rules of Civil Procedure.  The state court process
27   becomes null and void on the date the action is removed to the federal court.

28   *Beecher*, 381 F.2d at 373.

---
1

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

1   None of the defendants had been served with the state court summons prior to removal, and

2   none of them had been put on notice of the state court proceeding prior to removal.  Therefore,

3   Ferrigno's attempt to complete service of process on the defendants after removal was invalid.

4   Indeed, Ferrigno conceded that his attempt to serve the defendants via state court summons was

5   ineffective and that this Court would not have jurisdiction over the Defendants until he served them

6   with a federal court summons. (*See* Rocush Decl., Exhibit B).  Moreover, the Court has already

7   ruled that, as of November 20, 2009, the defendants had not been served.  (Civil Minutes dated

8   November 20, 2009, Docket No. 23).[1]

9   Ferrigno has not, nor attempted, to serve any of the defendants with a federal summons.

10   Because Ferrigno's attempted service of the state court process was "void," and he has not yet

11   validly served the defendants with a valid federal court summons, this Court (as it previously ruled)

12   has no jurisdiction over defendants and the action as it pertains to defendants must be dismissed for

13   insufficient service of process.

14   **II.    THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.**

15   Ferrigno's claims against defendants should also be dismissed because the Court lacks

16   personal jurisdiction over each of the defendants.[2]

17   **A.    General Principles Regarding Personal Jurisdiction.**

18   A federal court has personal jurisdiction over a nonresident defendant to the extent

19   authorized under the law of the forum state in which the district court sits, within the constitutional

20   limits of due process. Fed.R.Civ.P. 4(e); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484

21   (9th Cir. 1993).  Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, federal courts

22   in California may exercise jurisdiction to the extent permitted by the Due Process Clause of the

23   Constitution. *Core-Vent Corp*, 11 F.3d at 1484.  The Due Process Clause, in turn, allows federal

24   courts to exercise jurisdiction where either:  (1) the defendant has had continuous and systematic

25   contacts with the state sufficient to subject him or her to the general jurisdiction of the court; or (2)

26   [1]  This portion of the present motion is necessary because Ferrigno's attorney recently
27   communicated to defense counsel that Ferrigno has changed his mind and now contends that his
    attempted service via state court summons was effective. (Rocush Decl. at ¶ 5).
28   [2]  Because the Court lacks personal jurisdiction over the defendants, any attempt by Ferrigno to
    cure the deficiencies in his attempted service of process would be futile.

2

8194956_1

1   the defendant has had sufficient minimum contacts with the forum to subject him or her to the

2   specific jurisdiction of the court. *Id.* at 1485. Thus, the requisite "minimum contacts" for personal

3   jurisdiction may be asserted in two contexts—general or specific.

4          The party asserting that a court has personal jurisdiction over a defendant has the burden of

5   proving that personal jurisdiction exists. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007,

6   1019 (9th Cir. 2002); *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). The party with the

7   burden of establishing personal jurisdiction "must establish a *prima facie* case of jurisdiction to

8   survive a motion to dismiss." *Unocal*, 248 F. 3d at 922. To establish a *prima facie* case, Ferrigno

9   must allege facts which, if true, would be sufficient to establish personal jurisdiction. *Id.*

10         Here, Ferrigno has not alleged, and cannot truthfully allege, any facts that would be

11   sufficient to give the Court personal jurisdiction over KPE, Rensma, or Van Der Sanden.

12   **B.     General Jurisdiction Requires Systematic and Continuous Contacts with the
            Forum.**

13         An exercise of general jurisdiction requires that a defendant engage in "systematic and

14   continuous contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

15   U.S. 408, 416 (1984). The standard for establishing general jurisdiction is "fairly high," requiring

16   that the defendant's contacts in the state to be of a sort that "approximate physical presence" within

17   the forum state. *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1086 (9th Cir.

18   2000). Individuals who do not live, regularly work, or own property in California are not subject to

19   general jurisdiction in the state. *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 825

20   (N.D. Cal. 1992). Similarly, companies that are not registered or licensed to do business in a state

21   or do not have bank accounts or offices in a state are not subject to general jurisdiction in the state.

22   *Bancroft*, 223 F.3d at 1086.

23   **C.     Specific Jurisdiction Requires Purposeful Availment and Minimum Contacts.**

24         Specific jurisdiction over an out-of-state defendant is only permissible where the defendant

25   has "fair warning" that it may be haled into court in the state. *Burger King Corp. v. Rudzewicz*,

26   471 U.S. 462, 472 (1985). This "fair warning" requirement is satisfied if the defendant has

27   "purposefully directed" his activities at residents of the forum, and the litigation results from

28

3

8194956_1

1   alleged injuries that "arise out of or relate to" those activities. *Id. See also Glencore Grain*

2   *Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (specific

3   jurisdiction may be exercised when the cause of action arises out of or has a substantial connection

4   to the defendant's contacts with the forum).

5         To determine whether a court may exercise specific jurisdiction over a defendant, the court

6   must first inquire whether the nonresident defendant "established minimum contacts with the

7   forum State" via "purposeful availment" of the benefits and protections of that State's laws.

8   *Burger King*, 471 U.S. at 474-75. Courts must then consider the reasonableness and foreseeability

9   of suing a noncitizen based upon his contacts: bringing the noncitizen to court in a distant forum

10  must comport with Due Process norms of "fair play and substantial justice." *Int'l Shoe Co. v. State*

11  *of Washington*, 326 U.S. 310, 320 (1945).

12        Applying the principles of *Burger King*, the Ninth Circuit has developed the following

13  three-prong test to evaluate whether a defendant's contacts allow a state to subject him to specific

14  jurisdiction:

15          (1) the nonresident defendant must purposefully direct its activities at
        or consummate some transaction with the forum state or perform
16          some act by which it purposefully avails itself of the privilege of
        conducting activities in the forum state, thereby invoking the benefits
17          and protections of its laws;

18          (2) the claim must arise out of result from the defendant's forum-
        related activity; and
19

20          (3) the exercise of jurisdiction must be reasonable.

21  *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1188-89 (9th Cir. 2001).

22        The plaintiff has the burden of establishing the first two prongs of the test, and if the

23  plaintiff fails to satisfy either prong, the forum state cannot exercise personal jurisdiction over the

24  defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004).

25        If the plaintiff can establish both of the first two prongs, the burden shifts to the defendant

26  to prove that exercise of jurisdiction is not reasonable. *Id.* In determining whether the exercise of

27  jurisdiction is reasonable, the U.S. Supreme Court has cautioned that "[g]reat care and reserve

28  should be exercised when extending our notions of personal jurisdiction into the international

8194956_1

1  field." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987) ("The unique burdens

2  placed upon one who must defend oneself in a foreign legal system should have significant weight

3  in assessing the reasonableness of stretching the long arm of personal jurisdiction over national

4  borders."). *See also Core-Vent Corp.*, 11 F.3d at 1489 ("The foreign-acts-with-forum-effects

5  jurisdictional principle must be applied with caution, particularly in an international context.").

6  Jurisdiction over Parent Companies and Employees Cannot Be Based Solely on the Conduct of the

7  Subsidiary or Employer Company.

8      A court cannot exercise specific personal jurisdiction over a parent company merely

9  because there is sufficient basis to exercise jurisdiction over the subsidiary company. *AT & T v.*

10 *Compagnie Bruxelles Lambert,* 94 F.3d 586, 590 (9th Cir. 1996).  Rather, the existence of a parent-

11 subsidiary relationship does not establish personal jurisdiction over the parent company unless the

12 plaintiff can show that the subsidiary is, in effect, the *alter ego* of the parent company. *Id.*  To

13 apply the *alter ego* doctrine, a court must determine (1) that there is such unity of interest and

14 ownership that the separate personalities of the corporation and the individuals no longer exist and

15 (2) that failure to disregard the corporation would result in fraud or injustice. *Flynt Distributing*

16 *Company, Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984).  In the absence of an *alter ego*

17 relationship, a plaintiff must establish that the parent independently had sufficient contacts with the

18 forum state to justify the exercise of jurisdiction. *AT&T*, 94 F.3d at 590.

19      Similarly, the mere fact that a corporation is subject to personal jurisdiction does not mean

20 that its non-resident officers, agents or employees are subject to jurisdiction as well. *Davis v. Metro*

21 *Productions*, 885 F.2d 515, 520 (9th Cir. 1989).  Rather, each defendant's contacts with the forum

22 state must be examined individually to determine whether that defendant has sufficient minimum

23 contacts to support a finding of jurisdiction. *Id.* at 522.

24      Moreover, for jurisdictional purposes, the acts of corporate officers and directors in their

25 official capacities are considered acts of the corporation exclusively and are thus not material for

26 purposes of establishing whether the individuals had sufficient minimum contacts with the forum

27 state. *Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F.Supp.2d 1104, 1111 (C.D. Cal. 1999);

28 *Taylor-Rush v. Multi-Tech Corp.*, 217 Cal.App.3d 103, 113 (1990) ("Corporate officers and

5

8194956_1

1  directors cannot ordinarily be held personally liable for the acts or obligations of their corporation.

2  However, they may become liable if they directly authorize or actively participate in wrongful or

3  tortious conduct."). Therefore, a court can only properly assume jurisdiction over a nonresident

4  corporate officer or employee based on acts conducted in the scope of employment if (1) the

5  officer's act was one for which the officer would be personally liable; and (2) the officer's act in

6  fact created contacts between the officer and the forum state. *Goehring v. Superior Court*, 62

7  Cal.App.4[th] 894, 908 (1998). *See also Davis*, 885 F.2d at 521 (in order for personal jurisdiction to

8  be exercised over an individual defendant, the defendant's contacts must give rise to some

9  identifiable theory of liability pursuant to which the defendant's contacts on behalf of the corporate

10 employer may justifiably be imputed to the defendant individually); *Serafini v. Superior Court*, 68

11 Cal.App.4[th] 70 (1998) (specific jurisdiction can only be based on acts for which an individual could

12 be personally liable to the plaintiff). As explained by the California Court of Appeals:

13     [a]n act taken by a corporate officer may subject the officer to in personam
    jurisdiction. The act must be one for which the officer would be personally liable

14     and the act must in fact create contact between the officer and the forum state. (For
    example, no personal contact would result from doing nothing more than ratifying

15     an act taken by the corporation or by another corporate officer.) If both
    requirements are met, the act may be considered in determining if the contacts

16     between the individual and the state are substantial enough as to permit the state to
    exercise personal jurisdiction over the individual, or whether the exercise of

17     personal jurisdiction over the defendant offends 'traditional notions of fair play and
    substantial justice.

18

19 *Seagate Technology v. A.J. Kogyo Co.*, 219 Cal.App.3d 696, 703-704 (1990). Therefore, a

20 corporate agent can only be subject to personal jurisdiction based on acts that the individual

21 authorizes, directs, or in some meaningful sense participates in, and which could form the basis for

22 personal liability. *Id.*

23 **III.   KPE, RENSMA AND VAN DER SANDEN DO NOT HAVE SUFFICIENT
CONTACTS WITH CALIFORNIA TO PROVIDE FOR PERSONAL**

24 **JURISDICTION.**

25     **A.   KPE Has No Contacts with California or Ferrigno.**

26     In his Complaint, Ferrigno alleges, accurately, that at all relevant times he was employed by

27 PENAC (not KPE). (Complaint at ¶ 1). He also alleges, correctly, that KPE is a Dutch company

28 with its principal place of business in the Netherlands. (Complaint at ¶ 3).

6

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

8194956_1

1   Ferrigno then alleges, upon information and belief, that PENAC is a wholly owned

2   subsidiary of KPE, KPE "effectively runs" PENAC, and KPE employees directly supervise,

3   manage, control and operate the activities of PENAC in California. (Complaint at ¶¶ 2, 17).

4   Ferrigno also alleges, once again on information and belief, that Rensma and Van Der Sanden are

5   employees of KPE. (Complaint at ¶¶ 5, 6).

6       Other than his allegations that he is employed by PENAC and that KPE is based in

7   Eindhoven, Holland, Ferrigno's allegations regarding KPE, which are all made on information and

8   belief, are unsupportable and factually incorrect. Contrary to Ferrigno's allegations, PENAC is not

9   a directly wholly-owned subsidiary of KPE. Rather, PENAC is a directly wholly-owned subsidiary

10  of Philips Holding USA, Inc. (PHUSA). (Declaration of James Durchak ("Durchak Decl.") at ¶ 2).

11  PHUSA, in turn, is an indirectly wholly-owned subsidiary of KPE. (Durchak Decl. at ¶ 3).

12      More importantly, KPE does not in any way operate PENAC, nor do its employees manage

13  the activities of PENAC. (Durchak Decl. at ¶ 4). To the contrary, KPE is merely a holding

14  company. (Durchak Decl. at ¶ 5). It employs only a few people, in the Netherlands. (Durchak

15  Decl. at ¶ 7). Neither KPE nor its employees participate in PENAC's daily decisions or activities.

16  (Durchak Decl. at ¶ 8). KPE does not have a place of business anywhere in the United States or

17  employ anyone in the United States. (Durchak Decl. at ¶ 9). It does not conduct any business

18  whatsoever in the United States. (Durchak Decl. at ¶ 10).

19      Moreover, Ferrigno does not allege that any of KPE's (actual) employees ever had any

20  interaction with Ferrigno.[3] He does not allege that any of KPE's employees participated in any of

21  the conduct on which Ferrigno's claims are based: there is no allegation (nor could there truthfully

22  be) that any KPE employee participated in Ferrigno's review or the decision to transfer him from

23  the Supply Manager position to the Project Manager position or that any employee of KPE had any

24  input into whether or not to promise Ferrigno a "stay letter" or ultimately provide him with such a

25  letter.

26      In sum, KPE has no connection with California, Ferrigno, or the conduct on which

27  _____

28  [3]  As explained more fully below, neither Rensma nor Van Der Sanden is employed by KPE.
    (Rensma Decl. at ¶ 1; Van Der Sanden Decl. at ¶ 1).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

8194956_1

1  Ferrigno's claims in this matter are based.  Consequently, KPE does not have sufficient contacts

2  with California to warrant either general or specific jurisdiction over it.  Therefore, Ferrigno's

3  action against KPE must be dismissed for lack of personal jurisdiction.

**B.**     **Neither Rensma nor Van Der Sanden Has Sufficient Contact with California to Establish Personal Jurisdiction.**

**1.**     **There Is no Basis for General Jurisdiction over Rensma or Van Der Sanden.**

7       Rensma and Van Der Sanden are both residents of the Netherlands.  (Declaration of Hein

8  Rensma ("Rensma Decl.") at ¶ 8; Declaration of Paul Van Der Sanden ("Van Der Sanden Decl.")

9  at ¶ 12).  They both work in Eindhoven, and are employed by Philips Electronics Nederland B.V., a

10  Dutch company based in Eindhoven.  (Rensma Decl. at ¶ 1, 9; Van Der Sanden Decl. at ¶ 1, 13).

11  Philips Electronics Nederland B.V. is a wholly-owned subsidiary of KPE.  Philips Electronics

12  Nederland B.V. does not have any offices or employees in the United States.

13       Van Der Sanden, Rensma and Ferrigno all are assigned to work as part of the Philips

14  General Purchasing ("PGP") organization.  (Van Der Sanden Decl. at ¶ 2).  PGP is a shared

15  services organization that provides services in sourcing non-product related goods and services to

16  all of the entities in the Philips family.  (Van Der Sanden Decl. at ¶ 3).  In other words, the PGP

17  team members facilitate, coordinate and supervise the non-product related purchases made by all of

18  the Philips entities, to ensure that all of the companies within the Philips family are following best

19  practices for their non-product related purchases.  (Van Der Sanden Decl. at ¶ 3).

20       PGP is not a separate corporate entity or division; rather, it is a functional group comprised

21  of employees from various Philips entities throughout the world.  (Van Der Sanden Decl. at ¶ 4).

22  The employees who are assigned to the PGP team are all employees of their local Philips entity.

23  To that end, all of the employees on the PGP team based in the United States are employees of

24  U.S.-based Philips entities (and, by way of example, in the Netherlands PGP operates as part of

25  Philips Electronics Nederland B.V.).  (Van Der Sanden Decl. at ¶ 5-6).  The PGP team members

26  coordinate to make sure that each of their employing companies benefits from the standardized

27  purchasing processes overseen by the PGP organization.  (Van Der Sanden Decl. at ¶ 7).

28       Neither Van Der Sanden nor Rensma owns any property in California or has any assets

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

1  based in California. (Rensma Decl. at ¶ 10-11; Van Der Sanden Decl. at ¶ 14-15). Neither has an

2  office in California or travels to California on any regular basis, either for personal or business

3  reasons. (Rensma Decl. at ¶ 12-13; Van Der Sanden Decl. at ¶ 16-17). Indeed, Van Der Sanden

4  has traveled to California less than five times in his life. (Van Der Sanden Decl. at ¶ 17). All of

5  these trips were for business and lasted only a few days each. (Van Der Sanden Decl. at ¶ 17).

6  Rensma has only traveled to California two times in his life: once in 1982 for a few days on

7  vacation when he was a student, and once in June 2007, for three days for a management team

8  meeting. (Rensma Decl. at ¶ 13).

9       Ferrigno's Complaint does not contain any allegations regarding either individual on which

10  the Court could base an exercise of general personal jurisdiction. Consequently, there is clearly no

11  basis on which California, or this Court, could exercise general personal jurisdiction over either

12  individual.

13       **2.    There Is No Basis for an Exercise of Specific Personal Jurisdiction over
                  Van Der Sanden.**

14

15       Ferrigno asserts claims against Van Der Sanden for age-based discrimination, retaliation,

16  and age-based harassment. He also asserts a claim for violation of California Business and

    Professions Code § 17200, based on the alleged discrimination, harassment and retaliation.

17
       Ferrigno acknowledges that Van Der Sanden is a resident of the Netherlands and works in

18  Eindhoven. (Complaint at ¶ 6). Ferrigno alleges, in support of his claims against Van Der Sanden,

19  that Van Der Sanden was and is a management employee of PENAC and KPE. (Complaint at ¶ 6).

20  This allegation is unsupportable, and untrue. As noted above, Van Der Sanden is employed by

21  Philips Electronics Nederland B.V., a Dutch company. Van Der Sanden is, as alleged, Hein

22  Rensma's supervisor. (Complaint at ¶ 17).

23
       Other than the foregoing, which relate solely to Van Der Sanden's position in Ferrigno's

24  management hierarchy, Ferrigno's Complaint does not contain a single allegation relating to Van

25  Der Sanden. Consequently, Ferrigno fails to allege any basis on which to establish either liability

26  or personal jurisdiction for Van Der Sanden. Indeed, Ferrigno's Complaint does not have a single

27  substantive allegation regarding any wrongful conduct by Van Der Sanden.

28

8194956_1

1    To that end, Ferrigno does not allege that Van Der Sanden had any contact with either

2    California in general or Ferrigno specifically.  He does not allege that Van Der Sanden made a

3    single phone call or sent a single written communication to Ferrigno or anyone else in California,

4    or even elsewhere in the United States.  Also conspicuously absent from Ferrigno's Complaint is

5    any allegation that Van Der Sanden had any involvement in or connection with any of the actions

6    on which Ferrigno is basing his claims in this matter.  Indeed, there is a complete absence of any

7    allegations that Van Der Sanden engaged in any conduct at all, let alone any conduct that is any

8    way connected to California or on which personal liability could be based.

9    Furthermore, Ferrigno could not truthfully or credibly allege facts on which the Court could

10   establish personal jurisdiction over Van Der Sanden.  Van Der Sanden never directly supervised

11   anyone in California, including Ferrigno.  (Van Der Sanden Decl. at ¶ 10).  He never traveled to

12   California for any meetings with Ferrigno, nor has he ever telephoned Ferrigno in California.  (Van

13   Der Sanden Decl. at ¶ 11).  Van Der Sanden has had only very limited direct communication with

14   Ferrigno for any purpose.  (Van Der Sanden Decl. at ¶ 11).  He never purposefully directed any

15   conduct toward California.

16   Moreover, as explained below in regards to Ferrigno's claims against Hein Rensma,[4]

17   Ferrigno could not allege any conduct in which Van Der Sanden engaged for which he could be

18   personally liable.  Therefore, and because only conduct for which an individual can be personally

19   liable can be used to establish the requisite minimum contacts necessary for a court to exercise

20   personal jurisdiction, *Seagate Technology*, 219 Cal.App.3d at 703-704, there is no basis on which

21   this Court could exercise personal jurisdiction over Van Der Sanden.  Therefore, Ferrigno's action

22   against Van Der Sanden must be dismissed for lack of personal jurisdiction.

23              **3.      There Is No Basis for the Court to Exercise Specific Personal**
                          **Jurisdiction over Rensma.**
24
             In support of his claims against Rensma, Ferrigno alleges that Rensma was and is a
25
     management employee and/or supervisor of PENAC and KPE.  (Complaint at ¶ 5).  As with Van
26
     Der Sanden, this allegation is untrue and unsupportable.  Rensma is employed by Philips
27

28   _____
     [4]  *See* footnote 5, *infra.*

8194956_1

1  Electronics Nederland B.V., a Dutch company, as the Global Supply Market Manager, Facilities &

2  Industrial.  Ferrigno acknowledges that Rensma is a resident of The Netherlands and works in

3  Eindhoven.  (Complaint at ¶ 5).  Rensma is, as alleged, Ferrigno's direct supervisor.  (Complaint at

4  ¶ 17).  Rensma supervises employees from several Philips entities around the world who perform

5  functions for the PGP organization.  (Rensma Decl. at ¶ 5).  Ferrigno is the only person in

6  California that Rensma supervises, either directly or indirectly.  (Rensma Decl. at ¶ 4).

7       In support of his claims against Rensma, Ferrigno alleges as follows:

8         • On January 27, 2009, Rensma participated in a phone conference with Ferrigno in

9            which unspecified "Eindhoven-based management" told Ferrigno that it was "the

10           Company's" intention to keep him employed until his early retirement date if he

11           agreed to step aside from his current role as Supply Market Manager and into a

12           Project Manager position to allow a younger man to take his place.  (Complaint at ¶

13           29).

14        • On February 5, 2009, Ferrigno discussed his performance review with Rensma.  The

15           review contained a narrative evaluation that had been completed by Rensma which

16           was "very favorable" and noted that Ferrigno had achieved 100% of the goals and

17           objectives set for him for the year.  (Complaint at ¶¶ 30-31).

18        • On March 2, 2009, Ferrigno sent an email to Rensma in which he outlined his belief

19           that he was being discriminated against because of his age.  "The response of the

20           Company was to make Ferrigno's demotion official on March 12 by way of email."

21           (Complaint at ¶ 35).

22        • Rensma has tasked Ferrigno with performing tasks that would typically be carried

23           out by a full staff, thereby setting Ferrigno up to fail.  (Complaint at ¶ 36).

24      Based on the foregoing allegations, Ferrigno alleges claims against Rensma for age-based

25 discrimination, retaliation, age-based harassment, and violation of California Business and

26 Professions Code § 17200, based on the alleged discrimination, harassment and retaliation.

27      The allegations made against Rensma are insufficient to establish that Rensma had the

28 sufficient minimum contacts with California to establish a basis for personal jurisdiction over

8194956_1

1  Rensma in California.  There is no allegation that Rensma ever worked in California or traveled to

2  California to work with Ferrigno.  At most, Ferrigno alleges that Rensma communicated with

3  Ferrigno via email and telephone from Eindhoven on an intermittent basis as part of Rensma's

4  required job duties.  This is insufficient to establish that Rensma purposefully availed himself of

5  the benefits and protections of California law.  Therefore, Rensma lacks the minimum contacts

6  with California necessary to establish specific personal jurisdiction over him.

7      Even more significantly, regardless of the number of contacts Rensma has had with

8  California related to Ferrigno, none of these contacts can be used to establish personal jurisdiction

9  over Rensma because none of them could create any personal liability for Rensma.  *Davis*, 885

10  F.2d at 521.  Indeed, Ferrigno does not allege any conduct by Rensma for which Rensma could be

11  personally liable, whether connected to California or not.[5]

12      To that end, although Ferrigno has stated claims against Rensma for discrimination and

13  retaliation under California Government Code § 12940(a) and (h), California law is clear that

14  neither claim can be maintained against an individual.  *Roby v. McKesson Corp.*, 47 Cal.4th 686,

15  706-07 (2010); *Reno v. Baird*, 18 Cal.4th 640, 643 (1998) ("[W]e conclude that individuals who do

16  not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory

17  acts."); *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1173 (2008) (""[W]e

18  conclude that the employer is liable for retaliation under section 12940, subdivision (h), but

19  nonemployer individuals are not personally liable for their role in that retaliation.").  Because

20  Rensma cannot be personally liable to Ferrigno for any alleged discrimination or retaliation, any

21  alleged conduct of Rensma related to these claims cannot be used to establish Rensma's requisite

22  minimum contacts with California.

23      Similarly, Ferrigno's allegations in support of his claim for age-based harassment against

24  Rensma cannot be used to establish the minimum contacts necessary for personal jurisdiction,

25  because Ferrigno has not alleged any conduct for which Rensma could be personally liable for a

26

---

27  [5] Although Ferrigno's allegations against Van Der Sanden are wholly inadequate to even establish
   the barest of contact between Van Der Sanden and California, even if Ferrigno sought to add
28  additional allegations against Van Der Sanden, there would still be no basis for personal
   jurisdiction, as the following analysis would apply equally to him as to Rensma.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

8194956_1

1   harassment claim. Although an individual can be liable for harassment in violation of Government

2   Code § 12940, the type of conduct that qualifies as actionable harassment, rather than

3   discrimination, is narrowly circumscribed and consists only of the "type of conduct not necessary

4   for performance of a supervisory job." *Roby*, 47 Cal.4th at 706-07; *Reno*, 18 Cal.4th at 645-46.

5   "Harassment is not conduct of a type necessary for management of the employer's business or

6   performance of the supervisory employee's job." *Id.* Rather, harassment is limited to conduct such

7   as "verbal epithets or derogatory comments, physical interference with freedom of movement,

8   derogatory posters or cartoons, and unwanted sexual advances." *Janken v. GM Hughes Electronics*,

9   46 Cal.App.4th 55, 63 (1996) (citing Cal.Code Reg. Title 2, § 7287.6(b)(1)).

10          In contrast, "commonly necessary personnel management actions such as hiring and firing,

11  job or project assignments, office or work station assignments, promotion or demotion,

12  performance evaluations, the provision of support, the assignment or nonassignment of supervisory

13  functions, deciding who will and who will not attend meetings, deciding who will be laid off, and

14  the like, do not come within the meaning of harassment." *Reno*, 18 Cal.4th at 646, quoting *Janken*,

15  46 Cal.App.4th at 63-65. *See also Roby*, 47 Cal.4th at 706-07. "Actions of a type necessary to carry

16  out the duties of business and personnel management…may retrospectively be found

17  discriminatory if based on improper motives, but in that event the remedies provided by the FEHA

18  are those for discrimination, not harassment." *Reno*, 18 Cal. 4th at 646-47. Because "[m]aking

19  personnel decisions is an inherent and unavoidable part of the supervisory function," such

20  personnel decisions cannot provide a basis for individual liability. *Reno*, 18 Cal. 4th at 646-47.

21  Therefore, any conduct that involves the exercise of personnel management authority delegated by

22  an employer may constitute discrimination, but cannot constitute harassment. *Janken*, 46

23  Cal.App.4th at 64.

24          According to Ferrigno's allegations, the only conduct in which Rensma engaged that was in

25  any way connected to Ferrigno or California was Rensma's participation in Ferrigno's performance

26  evaluation and Rensma's purported demotion of Ferrigno. These actions are clearly actions that

27  fall within the scope of inherent supervisory duties and cannot support a claim for harassment. *See*

28  *Janken*, 46 Cal.App.4th at 79-80 (demoting plaintiffs, downgrading their performance appraisals,

13

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

8194956_1

1  sending them notifications warning of possible layoffs and failing to send warnings of possible

2  layoffs could not legally constitute harassment because all such actions were "within the realm of

3  properly delegated personnel management authority…[and] … would constitute discrimination, not

4  harassment.").  Because Rensma's conduct could not possibly support personal liability for a

5  harassment claim under Government Code § 12940, or any other claim, the alleged conduct cannot

6  be used to establish that Rensma had the requisite minimum contacts to support personal

7  jurisdiction over him.

8          As for Ferrigno's final claim against Rensma, for violation of Business & Professions Code

9  § 17200, this claim is based solely on Rensma's alleged violation of Government Code § 12940

10  through the conduct alleged above in support of Ferrigno's discrimination, retaliation and

11  harassment claims.  Because, as explained above, Rensma cannot be personally liable to Ferrigno

12  for any violation of Government Code § 12940, he also cannot be personally liable for any

13  violation of Business & Professions Code § 17200.  *Cel-Tech Communications, Inc. v. Los Angeles*

14  *Cellular Telephone Co.*, 20 Cal.4th 163, 182 (1999) (the scope of §17200 "is not unlimited. Courts

15  may not simply impose their own notions of the day as to what is fair or unfair.... If the Legislature

16  has permitted certain conduct or considered a situation and concluded no action should lie, courts

17  may not override that determination.  When specific legislation provides a 'safe harbor,' plaintiffs

18  may not use the general unfair competition law to assault that harbor."); *In re Vaccine Cases*, 134

19  Cal.App.4th 438 (2005) (plaintiffs cannot evade the requirements of a statutory cause of action by

20  repleading their cause of action as one for violation of the Unfair Competition Law); *Johnson v.*

21  *Hertz Local Edition Corp.*, 2004 WL 2496164 (N.D. Cal. 2004) (because plaintiff failed to

22  establish a claim for discrimination, his § 17200 claim on the basis of the same alleged

23  discrimination failed as well).

24          Because Ferrigno cannot establish any basis for personal liability against Rensma,[6] and

25  only contacts which could establish personal liability can be used to establish personal jurisdiction,

26  _____

   [6]   Indeed, not only could Ferrigno not prevail on a claim against any of these defendants, but his
27  claims in general are frivolous.  Ferrigno is still employed by PENAC with the same salary and
   benefits, and at the same level of responsibility.  Plaintiff remains, as always, an at-will employee.
28  Ferrigno has not been subjected to any adverse employment action nor been wronged in any legally
   cognizable manner, by any defendant.

8194956_1

1    Ferrigno cannot establish that Rensma had any contacts with California that would subject him to

2    the jurisdiction of the state.  Indeed, in denying Ferrigno's motion to remand, the Court has already

3    held that, under well-settled California law, the conduct alleged by Ferrigno cannot support a claim

4    against an individual defendant.  (Order Denying Plaintiff's Motion to Remand and Motion for

5    Attorneys' Fees, Docket No. 19).  If anything, the conduct that Ferrigno alleged regarding Torey

6    Elwell arguably presented a stronger basis for individual liability than that alleged against either

7    Rensma or Van Der Sanden, and the Court found even the conduct alleged against her to be

8    insufficient to provide for individual liability.  Consequently, and based on the Court's prior

9    reasoning, there can be no conceivable basis for individual liability against either Rensma or Van

10   Der Sanden, and therefore no basis for the Court to exercise personal jurisdiction over either

11   individual.  Because Rensma and Van Der Sanden lack the requisite minimum contacts with

12   California, Ferrigno's action against Rensma and Van Der Sanden must be dismissed for lack of

13   personal jurisdiction.

14   **IV.    CONCLUSION.**

15       Based on the foregoing, and because Ferrigno's attempted service of process on Defendants

16   has been insufficient and the Court lacks personal jurisdiction over the Defendants, Ferrigno's

17   action against these Defendants should be dismissed pursuant to Fed.R.Civ.P. 12(b)(2) and (5).

18

19   DATED:  February 26, 2010                    OGLETREE, DEAKINS, NASH, SMOAK &
                                                   STEWART, P.C.
20

21                                                 By: s/ Erica Rocush
                                                   Thomas M. McInerney
22                                                 Erica Rocush
                                                   Attorneys for Defendants
23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

8194956_1